UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17 CR 90 SNLJ (ACL) |
| | ) |
| TERRELL M. TAYLOR, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The Defendant, Terrell M. Taylor, is charged with being a felon in possession of a firearm, knowingly possessing marijuana with the intent to distribute, and carrying the firearm in connection with the drug trafficking offense. (Doc. 2.) Taylor filed Motions to Suppress Evidence (Docs. 25, 31) alleging that officers violated his Fourth Amendment rights. Specifically, Taylor claims that he was unlawfully seized by an officer in a private parking lot. He argues that items taken from his person and vehicle following the unlawful seizure were fruit of the poisonous tree, and requests that those items be suppressed. *Id*. The Government opposes the request for suppression. (Doc. 27.)

An evidentiary hearing was held (Doc. 32) during which a single Cape Girardeau Police Department Officer testified; he was cross-examined extensively by defense counsel. Following the hearing, the parties filed post-hearing memoranda. (Docs. 40, 42, 43, 48, 49.)

In consideration of the testimony and evidence adduced, the undersigned recommends that the following findings of fact and conclusions of law be adopted, and that the Defendant's Motions be denied.

## II.  Proposed Findings of Fact

After 10:00 p.m., on June 5, 2017, Officer Jonathan Brotz of the Cape Girardeau Police Department was on duty and dispatched to a private parking lot of an apartment building to investigate a suspicious vehicle.  The Cape Girardeau Code of Ordinances defines "private parking lot" as:

> any real estate within the city designated a private parking lot by the owner thereof and marked by signs conspicuously posted at the entrances to the parking lot, said signs to be of at least three (3) square feet in size and to contain the words "Private Parking," "Private Parking Lot," or words to similar effect sufficient to give notice to the public of the use of the real estate as a private parking facility.

*See* Cape Girardeau Code of Ordinances, Art. VI, § 26-262.  Defendant's Exhibit #3 (Doc. 25-3) reflects that a sign was posted in the parking lot alerting patrons that it was for "Resident Parking Only, Unauthorized Vehicles Will be Towed at Vehicle Owner's Expense."  A resident of the apartment building called 911 to request that the police come investigate the activity of a "strange vehicle" in the building's parking lot.  *See* Gov't. Ex. #2.  The caller reported that the vehicle did not belong there and she believed the car was "suspicious."  The Dispatcher advised Officer Brotz that the reportedly suspicious vehicle was maroon in color and parked next to a blue Chevy S-10 pickup.

Officer Brotz had responded to numerous such calls in the past.  When he arrived at the parking lot, he saw a maroon Buick parked next to a blue pickup.  Officer Brotz

was trained to park behind reportedly suspicious vehicles and to illuminate the area with the LED light bar on top of his patrol car, as well as his spotlight which was mounted on the driver's side of his patrol car.  Officer Brotz did not make an announcement that he was a police officer, or turn on any colored lights that might indicate he was law enforcement.  He planned to determine what the occupants of the Buick were doing.  Officer Brotz' patrol car was positioned such that the Buick could have been driven out of the parking lot by backing up and making a sharp left turn.  Taylor claimed in his initial Motion, that he "believe[d] that the vehicle behind him [wa]s a tow truck that [wa]s getting ready to tow the Buick if [he] d[id]n't vacate the parking space. . .Taylor believe[d] that he w[ould] be able to maneuver the rear of the Buick without hitting" what he claims to have believed was a tow truck. (Doc. 25 at 3.)

When Officer Brotz began to approach the driver of the Buick, the driver shifted the vehicle into reverse and began to travel in the direction of the patrol car.  Officer Brotz shouted at the driver to stop, however, the Buick's rear bumper collided with the front bumper of the parked patrol car.  Officer Brotz heard an audible crunch of the Buick striking his patrol car and the patrol car rocked back and forth as a result of being hit.  After impact, the driver put the Buick in drive and pulled slightly forward.  Officer Brotz feared the driver was attempting to leave the scene of a motor vehicle accident so he opened the driver's side door, grabbed the driver's wrist, and instructed the driver to exit the vehicle.  As this happened, the driver manipulated the gear shift from "drive" into the "park" position, and he exited the vehicle with Officer Brotz' assistance.  The driver was identified as the Defendant, Terrell M. Taylor.  No one else was in the vehicle.

Although Officer Brotz had been called to investigate a reportedly suspicious vehicle, he had not been given any information to give him reasonable suspicion that criminal activity was afoot. In fact, Officer Brotz testified that if Taylor had successfully backed up and pulled out of the parking lot without striking the patrol car, there would have been no reason to continue investigating the maroon Buick.

Officer Brotz testified that when he grabbed Taylor's wrist he had to detain Taylor based on his fear that Taylor was attempting to leave the scene of an accident; he also believed that Taylor had committed the offense of improper backing. (Tr. 24, 42-43, 55.) Officer Brotz' reaction time was swift in that after hearing the crunch of the Buick striking his patrol car and the Buick driving slightly forward, he took control of the driver, and prevented Taylor from leaving the scene; or whatever Taylor may have chosen to do next as the vehicle was still in drive. Although Taylor did not testify, he claims that he planned to stop his vehicle and investigate the traffic accident he had just caused. Once Taylor was secured in handcuffs, Officer Brotz notified Dispatch that Taylor had struck his patrol car.

Other officers arrived on the scene after the accident occurred at which time Taylor was in handcuffs. Officer Brotz noticed that Taylor was trying to reach his hands into his waistband. Officer Brotz instructed Taylor to stop reaching but Taylor did not listen. As a result, Officer Brotz conducted a pat-down of Taylor's waist and discovered a loaded handgun. The handgun had one round in the chamber and six additional rounds in the magazine; it was rendered safe.

When the officers ran Taylor's name, they learned he was on probation for delivery or possession of a weapon in a correctional facility which made him a previously convicted felon.  Although the officers did not announce their intent, Taylor was placed under arrest for being a felon in possession of a firearm.

A further search of Taylor's person was conducted before he was transported to the jail, and marijuana was found in one of his pockets.  An inventory search of the vehicle was completed before it was towed; and additional marijuana, digital scales, packaging materials, and other items were found in a bag located in the trunk.

Another officer conducted an investigation of the traffic accident pursuant to Department policy.  The front bumper of the patrol car was damaged.  No traffic citations were issued.

### III.  Discussion

Taylor requests that the evidence seized from his person and vehicle be suppressed based on his assertion that:

> When Officer Brotz grabbed Mr. Taylor by his wrist to pull him from his car, Mr. Taylor was seized.  His seizure was illegal because it was not supported by articulable facts that criminal activity was afoot or supported by facts establishing probable cause to arrest Mr. Taylor for a crime.  The ensuing search and seizure of a firearm and marijuana from Mr. Taylor's person is "fruit" of his illegal search.  Likewise, the search and seizure of evidence from the Buick's trunk is "fruit" of his illegal seizure.

(Doc. 25 at 5.)

The Government opposed the Defendant's suppression request.  (Docs. 27, 42.)

**III.A. Was Taylor unlawfully seized?**

"Not all personal encounters between law enforcement officials and citizens fall within the ambit of the Fourth Amendment." *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001). "There is no seizure when a police officer approaches an individual and merely questions him or asks to examine his identification, so long as the officer does not convey a message that compliance with his requests is required." *United States v. Delaney*, 52 F.3d 182, 186 (8th Cir. 1995) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

"Law enforcement officers do not violate the Fourth Amendment by attempting to start a conversation with someone and asking questions; answers voluntarily given may be introduced as evidence." *United States v. Morgan*, 270 F.3d 625, 630 (8th Cir. 2001) (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983)). "Police do not violate the Fourth Amendment merely by approaching individuals in public places and asking questions, requesting identification, and requesting consent to search, as long as the police do not coerce cooperation." *United States v. Garcia*, 441 F.3d 596, 598 (8th Cir. 2006) (citing *United States v. Drayton*, 536 U.S. 194, 200-01 (2002)) (finding no Fourth Amendment violation in search of Garcia's car by police officers who had approached Garcia after he had parked his car in a church parking lot and had exited the car; police officers then requested Garcia's identification and his consent to search his car).

A police officer may stop and frisk a citizen if the officer has reasonable suspicion, based on articulable facts, that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 29-30 (1968). *See also United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United*

*States v. Woods*, 2014 WL 1282292 at *2 (8th Cir. Apr. 1, 2014), citing *Terry*. "A reasonable suspicion is a particularized and objective basis for suspecting criminal activity by the person who is stopped." *United States v. Hightower*, 716 F.3d 1117, 1119-20 (8th Cir. 2013) (quotation omitted). When a person commits a crime in the presence of the officer, that conduct gives the officer probable cause—a higher standard than reasonable, articulable suspicion---to seize the person." *United States v. Banks*, 553 F.3d 1101, 1104 (8th Cir. 2009) citing *United States v. Lewis*, 183 F.3d 791, 794 (8th Cir. 1999) (describing the rule as "well-established"); *United States v. Beardslee*, 609 F.2d 914, 917-18 (8th Cir. 1979) (noting that an officer had probable cause to arrest after the defendant pointed a firearm at another officer). The Eighth Circuit has repeatedly held that "*any* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001) (emphasis in original). *See also United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc); *United States v. Mallari*, 334 F.3d 765 (8th Cir. 2003).

In determining whether reasonable suspicion exists, [courts] consider the totality of the circumstances in light of the officers' experience and specialized training." *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012) (quotation omitted).

"An investigative detention may turn into an arrest if it 'lasts for an unreasonably long time or if officers use unreasonable force.'" *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005) (quoting *United States v. Navarrette-Barron*, 192 F.3d 786, 790 (8th Cir. 1999). During an investigative stop, officers should use the least intrusive means of detention and investigation reasonably necessary to achieve the purpose of the detention."

Page **7** of **14**

*United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006) citing *Maltais*, 403 F.3d at 556.  "During a *Terry* stop, officers are authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the stop." *Id*.  The Eighth Circuit has previously held that use of handcuffs can be a reasonable precaution during a *Terry* stop to protect their safety and maintain the status quo." *Id*. (citations omitted).

Moreover, if the officer reasonably believes the person with whom he is dealing is armed and dangerous, he is permitted to conduct a protective search of the person's outer clothing, and any weapons seized as a result of such a search "may be properly introduced into evidence against the person from whom they were taken." *United States v. Cotter*, 701 F.3d 544, 547 (8th Cir. 2012) (quoting *Terry*, 392 U.S. at 30-31).  An "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man under the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

At the time of the incident in this case, Officer Brotz had roughly three years of law enforcement experience and he had responded to prior calls regarding suspicious vehicles.  He was trained to respond to the reported location, get out and see what the person is "doing there, and then you can release them or go further depending on what you got."  (Tr. 6.)  Officer Brotz further explained that he was taught to never "pull into a parking space next to a vehicle because you just don't know what you are going to encounter when you go to a call like these."  (Tr. 35.)  Pulling behind a suspicious vehicle also enables the best scene illumination with patrol car lighting equipment.

Taylor's car was not stopped by police; rather, with no earlier contact or directive from the police, Taylor parked in a private parking lot. Thereafter, a resident of the apartment building adjoining the parking lot invited the police to come investigate via a 911 call. Officer Brotz parked a distance behind Taylor's vehicle, turned on his light bar and spotlight, and then began to approach the driver to investigate his presence in the parking lot. Instead of communicating with the person who had illuminated his vehicle and was approaching the driver's side, Taylor attempted to drive away. The only way to depart was to back up, pull forward, and turn out of the parking space. Taylor's attempt to leave failed as he struck the parked patrol car when he backed up. After colliding with the patrol car and shifting the car into drive, whether Taylor was attempting to park his Buick or flee the parking lot is not important as Officer Brotz reasonably believed Taylor was attempting to leave the scene of an accident. He also believed Taylor had committed the offense of improper backing.

The Cape Girardeau Code of Ordinances (hereinafter "City Code") provides that leaving the scene of an accident is a Miscellaneous offense. Art. IX, § 26-331(a) of the City Code states:

> A person commits the offense of leaving the scene of a motor vehicle accident when being the operator or driver of a vehicle on the highway or on any publicly or privately owned parking lot or parking facility generally open for use by the public, or on any other property, and knowing that an injury has been caused to a person or damage has been caused to property, due to his culpability or to accident, he leaves the place of the injury, damage or accident without stopping and giving his name, residence including city and street number, motor vehicle number and chauffer's or registered operator's number, if any, to the injured party or to the operator

> or owner of the damaged vehicle or property, or to a police officer; if no police officer is in the vicinity, then to the nearest police station or judicial officer.

The ordinance further recites that "all peace officers shall have jurisdiction, when invited by an injured person, to enter the premises of any privately owned parking lot or parking facility for the purpose of investigating an accident and performing all necessary duties regarding such accident." *Id.*

Based on the totality of the circumstances, the Court concludes that Officer Brotz had reasonable suspicion that Taylor was engaged in criminal activity sufficient to warrant an investigatory stop. *See United States v. Edmonds*, 948 F. Supp. 562, 565 (E.D. Va. 1996) (officer's observation in commercial district at 10:30 p.m., of a parked car in a no parking zone with lights and engine off, in area where there had been a recent wave of auto thefts was justified in believing that criminal activity was afoot). Taylor literally struck a parked patrol car and was in the process of pulling away from the damaged vehicle when Officer Brotz stopped him as he feared Taylor was going to leave the scene of the accident. The way the accident occurred was also a violation of City Code § 26-226, Striking stopped or parked vehicle, which provides that any "driver of a vehicle shall control the vehicle in such a manner that it shall not collide with any other vehicle which is lawfully stopped or parked." That ordinance violation matches the violation described by Officer Brotz as "improper backing." It's likely that Officer Brotz was shocked and stunned by the sequence of events which escalated from a simple check of a suspicious vehicle to that suspicious vehicle causing a motor vehicle accident with the officer's patrol unit. In any event, the accident and Officer Brotz' perception that

Taylor was attempting to leave the scene of the accident gave Officer Brotz "a reasonable, articulable suspicion of criminal activity." In addition, Taylor's improper backing constituted a traffic violation which provided Officer Brotz with probable cause to make a traffic stop. The stop of Taylor's vehicle and physical seizure of his person after the accident was lawful.

Taylor argues that Officer Brotz did not have jurisdiction to arrest him for a city ordinance violation because the parking lot on which the motor vehicle accident occurred was "private property." (Doc. 40 at 3-5.) The record of the case reveals that a resident of the private property called the police and invited them to investigate the activities of the operator of the Buick, who turned out to be Taylor. Officer Brotz was not an uninvited guest rather he was invited to conduct an investigation. Certainly this is a rare situation where a police officer is an invited guest who winds up being the victim of a vehicle accident on private property, and then reasonably perceives that the vehicle operator who caused the accident was going to leave the scene. That is, nevertheless, exactly what happened—Officer Brotz was not only an invited guest, he also became an "injured person" under the City Code. *See* City Code, Art. IX, § 26-331(b). Officer Brotz as both an invited guest and an "injured person" who was present in his role as a peace officer had jurisdiction to investigate the activities of Taylor. In a similar vein, the Tenth Circuit addressed a defendant's argument that police officers committed a trespass when entering a private parking area while investigating him. *United States v. Sanders*, 87 F.App'x. 83, 86 (10th Cir. 2004), citing *United States v. Marchant*, 55 F.3d 509, 516-517 (10th Cir. 1995). The Tenth Circuit rejected Sanders' contention that although the parking lot may

have been private property, that was irrelevant as Sanders did not reside at the apartment complex and "did not exercise 'lawful possession, ownership, or control' over the parking lot, and had no right to exclude others' from it." The same is true for Taylor.

Taylor further argues that Officer Brotz' decision to open the Buick's car door, secure him by the wrist, and remove him from the car was not the least intrusive means available to detain him. Taylor suggests the officer should have "turned on his flashlight, identified himself as a police officer and requested Taylor to step from the car." (Doc. 43 at 5.) That approach may have worked under other circumstances. Here, however, the scene was fully illuminated with Officer Brotz' headlights, LED bar, and spotlight; an accident had just occurred late at night when Officer Brotz was the only officer on the scene; Taylor did not engage Officer Brotz in communication after having the lights shone on his vehicle; and Taylor not only shifted the Buick into drive but moved forward after colliding with the patrol car. Officer Brotz' decision to physically secure Taylor was entirely reasonable. Furthermore, the use of handcuffs was provident as it prevented Taylor from accessing the loaded firearm that was hidden in his waistband. Officer Brotz' physical removal of Taylor from the Buick and use of handcuffs to maintain control of Taylor was not more intrusive than reasonably necessary so that he could conduct an investigation.

The Court further finds that Officer Brotz' pat-down of Taylor after Taylor would not abide the officer's directives to keep his hands behind his back was justified under *Terry*. The pat-down of Taylor's waistband led to Officer Brotz discovering that Taylor was in possession of a firearm. When the officers checked Taylor's criminal history they

Page **12** of **14**

learned he not only possessed a firearm, he was also a previously convicted felon. Consequently, the officers had probable cause to arrest Taylor.  Thereafter, Cpl. Zajicek's pat-down of Taylor prior to placing Taylor in the patrol vehicle was a lawful search incident to arrest.  *See New York v. Belton*, 453 U.S. 454 (1982).  Finally, the inventory search of the Buick that yielded the seizure of additional marijuana, digital scales, packaging materials, and other items was lawful.  *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987).

In consideration of the foregoing, it is recommended that Taylor's request for suppression based on a claim of being unlawfully seized be denied.

### III.B.  Did parking behind the Buick constitute a seizure?

Taylor supplemented his suppression request with the following argument:

> An illegal seizure of Mr. Taylor's person also occurred when Officer Brotz pulled his patrol car behind Mr. Taylor's parked vehicle because Officer Brotz effectively cut off all legal ways for Mr. Taylor to reverse his vehicle and "walk away" from the encounter with Officer Brotz.

(Doc. 31 at 2.)  In a later reply, Taylor "withdr[ew] his argument that a seizure occurred at the moment Officer Brotz pulled in behind Mr. Taylor's vehicle." (Doc. 49 at 2.)  As such, Taylor has abandoned the argument and there is no need for the undersigned to examine that issue.

### IV.  Conclusion

**IT IS HEREBY RECOMMENDED** that the Defendant's Motions to Suppress (Docs.25, 31) be **DENIED**.

The parties are advised that they have fourteen days, or not later than June 5, 2018, in which to file written objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of May, 2018.